IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2004

## VENESSA BASTON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Morgan County**
**No. 8773-B     E. Eugene Eblen, Judge**

**No. E2003-02471-CCA-R3-PC**
**June 9, 2004**

The petitioner appeals the denial of her post-conviction relief petition relating to her guilty plea to felony murder for which she received a life sentence. On appeal, the petitioner contends: (1) she received ineffective assistance of counsel; and (2) her guilty plea was unknowingly and involuntarily entered. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Jeffery H. Wicks, Kingston, Tennessee, for the appellant, Venessa Baston.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; J. Scott McCluen, District Attorney General; and Frank A. Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner pled guilty to felony murder and received a life sentence as a result of her participation in the robbery and homicide of the victim, Charles Farley McCann, on November 19, 2000. *See* Tenn. Code Ann. § 39-13-202(a)(2). According to the state's recitation of the facts at the plea hearing, co-defendant Jamie Miller told the petitioner and co-defendants Glenn Holt and Gerald Dixon that she was angry with the victim because she had been charged with theft of his property. Although the recitation at the guilty plea hearing does not identify the relationship of the parties involved, the testimony at the post-conviction hearing combined with the state's recitation of the facts at the sentencing hearing indicate Dixon was the petitioner's boyfriend, Holt was the petitioner's son, and Miller was Holt's girlfriend. Miller informed them that the victim kept "quantities of money hidden in his home." The petitioner and the co-defendants planned to rob the victim, and Miller expressed her desire to kill the victim.

The petitioner and the co-defendants traveled to the victim's residence in the petitioner's vehicle. Upon arriving, the petitioner and Holt entered the residence while Miller and Dixon remained inside the vehicle. While inside the residence, the victim was subjected to a physical attack which resulted in his death, and various items belonging to the victim were taken from the residence. Upon leaving the residence, the petitioner and the co-defendants divided the proceeds from the robbery and destroyed evidence.

## I. POST-CONVICTION RELIEF HEARING

At the post-conviction relief hearing, the forty-three-year-old petitioner testified defense counsel was appointed to represent her after her arrest, and defense counsel first met with her in order to inform her of the appointment. The petitioner stated defense counsel next met with her for five to ten minutes one to two weeks prior to the scheduled trial date. The petitioner further stated defense counsel did not explain the charges or any possible defenses, and defense counsel did not review the co-defendants' statements or any other discovery materials with her.

The petitioner testified regarding a statement which she gave to the police prior to her arrest. She recalled that police officers came to her residence and asked her to give a statement. Upon arriving at the police station, the petitioner decided not to give a statement and the officers told her that she could leave. The petitioner stated the officers then attempted to prevent her from leaving and had her vehicle towed. The petitioner further stated that upon returning to her residence, an officer refused to allow her to enter the residence. The petitioner then returned to the police station and gave a statement.

The petitioner testified that when she gave the statement to the police, she was under the influence of morphine, M.S. Contin, and "nerve medicine." The petitioner stated she was not "out of it" due to the medication, but she was nervous and frightened when she gave the statement. The petitioner further stated she did not lie to the police and that she did not read her statement. The petitioner explained she did not relay this information to defense counsel because she was unable to reach him.

The petitioner testified defense counsel first approached her with a plea offer on February 20, 2002, the day she entered the plea. The petitioner stated she and defense counsel never discussed a plea prior to that date. Defense counsel and his secretary read the plea agreement to the petitioner. The petitioner stated defense counsel informed her that she would receive a sentence of twenty-five years at 30% with credit at "three for one." The petitioner testified she entered the plea because she had been taken off of her medication a few weeks prior to the plea hearing and was frightened. She stated she did not understand the charges to which she pled. The petitioner further stated defense counsel instructed her to answer "yes" to the trial court's questions at the plea hearing.

Defense counsel testified he met with the petitioner on three or four occasions at the county jail. They discussed the case in detail during each meeting, including the felony murder and aggravated robbery offenses charged in the indictment, and possible defenses. Defense counsel further stated he

conducted discovery and reviewed these materials with the petitioner along with the co-defendants' statements to the police.

Defense counsel recalled that the petitioner and her son, co-defendant Glenn Holt, each gave a statement to the police maintaining that the other had killed the victim. Each co-defendant admitted to the aggravated robbery but denied the homicide. Defense counsel stated he and the petitioner discussed her statement. Defense counsel learned the petitioner was not in custody when she gave the statement and she signed both the statement and a waiver of rights form. Defense counsel also found no evidence of coercion and stated he was unaware of any grounds upon which to file a motion to suppress the petitioner's statement.

Defense counsel testified he received a plea offer from the state after his second or third meeting with the petitioner. According to the offer, if the petitioner pled guilty to felony murder as alleged in the indictment, the state agreed to refrain from seeking a sentence of life without parole and agreed to drop pending aggravated arson cases and other charges collateral to the instant case. Defense counsel stated the prosecution refused to agree to a plea to a lesser offense because they felt they had a strong case. At the petitioner's request, the state agreed to refrain from entering into a more favorable agreement with the petitioner's son. The petitioner's son was subsequently convicted at trial of felony murder and received a life sentence.

Defense counsel explained to the petitioner the fact that her son was the person who actually killed the victim was not a defense to felony murder due to her involvement. Defense counsel informed the petitioner that a life sentence is sixty years at 85%, which is approximately fifty-one years, but he could not guarantee she would serve only fifty-one years. After defense counsel explained the terms of the plea agreement to the petitioner, she agreed to enter the plea. Defense counsel testified the petitioner was able to communicate with him and seemed "oriented." He did not recall the petitioner complaining about her medication.

Defense counsel stated that had the petitioner gone to trial on the felony murder charge, the state planned to seek a sentence of life without parole. He further stated that had the petitioner been convicted of the aggravated arson charges, the trial court would have likely "stacked" the sentences and ordered her to serve the sentences at 100%. According to defense counsel, co-defendant Dixon was convicted of a lesser charge and received a five-year sentence. Defense counsel further stated that co-defendant Miller was convicted of a lesser charge and received a three-year sentence.

In denying relief, the post-conviction court found the petitioner received effective assistance of counsel; she was not under the influence of drugs when she entered the plea; and she knowingly and voluntarily entered the plea.

## II. STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn.

-3-

1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends she received ineffective assistance of counsel with regard to her guilty plea. Specifically, the petitioner maintains defense counsel failed to review the co-defendants' statements and other discovery material with her, failed to explain any possible defenses, and failed to adequately inform her of the terms of the plea agreement. The petitioner also contends defense counsel was deficient in allowing her to plead guilty to an offense requiring her to serve at least fifty-one years. We disagree with her assertions.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S .W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; *see* Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle the petitioner to relief. Tenn. Code Ann. § 40-30-110(f) (2003). This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields, 40 S.W.3d at 456 -57.

In denying relief, the post-conviction court implicitly accredited defense counsel's testimony that he reviewed with the petitioner the co-defendants' statements and other discovery materials, discussed possible defenses, and informed the petitioner her assertion that her son was the actual

-4-

triggerman was not a defense to the charge. The petitioner maintained defense counsel informed her that pursuant to the plea agreement, she would receive a twenty-five-year sentence at 30% and three for one credits in prison. However, the post-conviction court implicitly accredited defense counsel's testimony that he explained the terms of the plea agreement to the petitioner and informed her she would receive a life sentence of sixty years at 85%. The evidence does not preponderate against the post-conviction court's findings.

The petitioner further maintains defense counsel was ineffective in allowing her to enter into a plea agreement to felony murder with a life sentence, which, in essence, meant she would be ninety-two years old before being eligible for release. Pursuant to the plea agreement, the state dismissed pending aggravated arson cases and other charges relating to this case. At the petitioner's request, the state also agreed to refrain from negotiating a more favorable plea agreement with her son. Defense counsel testified he explained the terms of the plea agreement and the sentence to the petitioner, who then agreed to enter the plea. We recognize that even with the dismissal of the other charges pursuant to the plea agreement, the petitioner will in all likelihood spend the remainder of her life in confinement. However, we are unable to conclude this fact alone renders defense counsel's performance deficient. This issue is without merit.

## IV. UNKNOWING AND INVOLUNTARY GUILTY PLEA

Due process demands that a guilty plea be entered voluntarily, knowingly, and understandingly. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The plea is involuntary if the accused is incompetent or "only if it is the product of 'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In determining whether a guilty plea comports with due process, the court must assess whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The court must consider all of the relevant circumstances that existed when the plea was entered, including the defendant's intelligence, familiarity with criminal proceedings, representation by competent counsel with whom the defendant had the opportunity to confer, the advice of counsel and the court concerning the charges, and the reasons for entering the guilty plea. Blankenship, 858 S.W.2d at 904; State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

A defendant's testimony at a plea hearing that his or her plea is voluntary is a "formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

The petitioner, who was forty-one years old when she entered the plea, submits she would not have pled guilty had she known she would be ninety-two years old before she would be eligible for release from prison. However, in denying relief, the post-conviction court implicitly accredited

defense counsel's testimony that he explained the terms of the plea agreement to the petitioner and informed her that she would receive a life sentence of sixty years at 85%. Furthermore, our review of the guilty plea hearing reflects the trial court expressly advised the petitioner her sentence would be calculated at "60 years less 15% . . . about 51 years." According to defense counsel's testimony, the petitioner was also involved in negotiating the terms of the plea agreement. Defense counsel stated the petitioner requested the prosecution refrain from negotiating a more favorable agreement with her son, and the prosecution agreed to that request. Thus, the evidence does not preponderate against the findings of the post-conviction court.

Our review of the plea hearing further reveals the petitioner knowingly and voluntarily entered the plea. At the plea hearing, the trial court explained the indicted charges, recounted the possible sentence for each charge, and informed the petitioner of the charge to which she was pleading. The petitioner informed the trial court she and defense counsel discussed the case and she understood the charges and the plea agreement. The post-conviction court also examined the plea hearing in finding the petitioner knowingly and voluntarily entered the plea. The evidence does not preponderate against the post-conviction court's findings.

In contending her plea was unknowing and involuntary, the petitioner notes the convictions and sentences received by her co-defendants. However, the record indicates that co-defendant Holt, who was convicted of felony murder and received a life sentence, was tried after the petitioner entered her plea. Furthermore, the record does not indicate whether co-defendants Miller and Dixon, who were convicted of lesser offenses and received lesser sentences, were tried before or after the petitioner's plea. The record before us also indicates their involvement in the offenses was less than the petitioner's involvement. Therefore, we decline to consider the co-defendants' sentences in determining whether the petitioner knowingly and voluntarily entered the plea.

Based upon our review of the record, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE